No. 21-13146

In The

# United States Court of Appeals

### For The Eleventh Circuit

**ERIC STEINMETZ, MICHAEL FRANKLIN, and SHENIKA THEUS,**
*individually and on behalf of all others similarly situated***,**

*Plaintiffs – Appellees,*

v.

## BRINKER INTERNATIONAL, INC.,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, IN CASE NO. 3:18-cv-00686-TJC-MCR.
THE HONORABLE TIMOTHY J. CORRIGAN, CHIEF UNITED STATES DISTRICT
JUDGE, AND THE HONORABLE MONTE C. RICHARDSON, UNITED STATES
MAGISTRATE JUDGE.**

---

## BRIEF OF *AMICI CURIAE* RESTAURANT LAW CENTER, RETAIL LITIGATION CENTER, INC., AND NATIONAL RETAIL FEDERATION IN SUPPORT OF APPELLANT

---

**Angelo I. Amador**
RESTAURANT LAW CENTER
**2055 L Street NW, Suite 700**
**Washington, DC  20036**
**(202) 492-5037**

*Counsel for Restaurant Law Center*

**Deborah R. White**
RETAIL LITIGATION CENTER, INC.
**99 M Street SE, Suite 700**
**Washington, DC  20003**
**(202) 869-0200**

*Counsel for Retail Litigation Center, Inc.*

**Stephanie A. Martz**
NATIONAL RETAIL FEDERATION
**1101 New York Avenue NW, Suite 1200**
**Washington, DC 20005**
**(202) 783-7971**

*Counsel for National Retail Federation*

**Michael W. McTigue Jr.**
**Meredith C. Slawe**
**Max E. Kaplan**
COZEN O'CONNOR
**One Liberty Place**
**1650 Market Street, Suite 2800**
**Philadelphia, Pennsylvania  19103**
**(215) 665-2000**

*Counsel for Amici Curiae*

*Steinmetz, et al. v. Brinker International, Inc.*, No. 21-13146

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, *amici curiae* hereby certify that they are non-profit member organizations with no publicly-traded stock.

Pursuant to Eleventh Circuit Rule 26.1-2(b), *amici curiae* hereby certify that, to the best of their knowledge, the following individuals and entities have an interest in the outcome of this case:

1.  Ahdoot & Wolfson, PC – Counsel for Plaintiffs-Appellees

2.  Alamillo, Peter – Former Plaintiff

3.  Amador, Angelo I. – Counsel for *amicus curiae* Restaurant Law Center

4.  Anderson, Jaclyn L. – Counsel for Plaintiffs-Appellees

5.  Barthle, Patrick A. – Counsel for Plaintiffs-Appellees

6.  Brinker International, Inc.; NYSE:EAT – Defendant-Appellant

7.  Clark, Miles – Counsel for Plaintiffs-Appellees

8.  Cornelia, Sarah B. – Counsel for Defendant-Appellant

9.  Corrigan, Hon. Timothy J. – U.S. District Court Chief Judge of originating court

10. Cox, Barton W. – Counsel for Defendant-Appellant

*Steinmetz, et al. v. Brinker International, Inc.*, No. 21-13146

11.    Cozen O'Connor – Counsel for *amici curiae* Restaurant Law Center, Retail Litigation Center, Inc., and National Retail Federation

12.    Dickey, Gilbert Charles – Counsel for *amici curiae* Chamber of Commerce of the United States of America

13.    Fagelman, Jason K. – Counsel for Defendant-Appellant

14.    Federman, William B. – Counsel for Plaintiffs-Appellees

15.    Federman & Sherwood – Counsel for Plaintiffs-Appellees

16.    Franklin, Jonathan S. – Counsel for Defendant-Appellant

17.    Franklin, Michael – Plaintiff-Appellee

18.    Fuller, Daniel – Counsel for Defendant-Appellant

19.    Green, Christopher – Counsel for Defendant-Appellant

20.    Green-Cooper, Marlene – Former Plaintiff

21.    Hannon, Kevin S. – Counsel for Plaintiffs-Appellees

22.    The Hannon Law Firm, LLC – Counsel for Plaintiffs-Appellees

23.    Hendrix, Nicholas – Former Counsel for Defendant-Appellant

24.    Kaplan, Max E. – Counsel for *amici curiae* Restaurant Law Center, Retail Litigation Center, Inc., and National Retail Federation

25.    Kasdan Turner Thomson Booth LLP – Former Counsel for Plaintiffs-Appellees

26.    Kester, Francesca – Counsel for Plaintiffs-Appellees

*Steinmetz, et al. v. Brinker International, Inc.*, No. 21-13146

27.    Knepper & Clark, LLC – Counsel for Plaintiffs-Appellees

28.    Lang, Christopher – Former Plaintiff

29.    Lawrence, Brian Christopher – Counsel for Defendant-Appellant

30.    LippSmith, Graham B. – Counsel for Plaintiffs-Appellees

31.    LippSmith, MaryBeth – Counsel for Plaintiffs-Appellees

32.    LippSmith LLP – Counsel for Plaintiffs-Appellees

33.    Lowndes, Drosdick, Doster, Kantor & Reed, P.A. – Counsel for
       Defendant-Appellant

34.    Martin, Jean Sutton – Counsel for Plaintiffs-Appellees

35.    Martz, Stephanie – Counsel for *amicus curiae* National Retail
       Federation

36.    McCune Wright Arevalo, LLP – Counsel for Plaintiffs-Appellees

37.    McTigue Jr., Michael W. – Counsel for *amici curiae* Restaurant Law
       Center, Retail Litigation Center, Inc., and National Retail Federation

38.    Morgan & Morgan, PA – Counsel for Plaintiffs-Appellees

39.    National Retail Federation – *amicus curiae*

40.    Norton Rose Fulbright US LLP – Counsel for Defendant-Appellant

41.    Perez, Frank A. – Former Counsel for Plaintiffs-Appellees

42.    Reddy, Kenya – Counsel for Plaintiffs-Appellees

43.    Restaurant Law Center – *amicus curiae*

*Steinmetz, et al. v. Brinker International, Inc.*, No. 21-13146

44.    Retail Litigation Center, Inc. – *amicus curiae*

45.    Richardson, Hon. Monte C. – U.S. Magistrate Judge in originating court

46.    Sanders, Fred – Former Plaintiff

47.    Sauder, Joseph G. – Counsel for Plaintiffs-Appellees

48.    Sauder Schelkopf, LLC – Counsel for Plaintiffs-Appellees

49.    Siegal, Peter B. – Counsel for Defendant-Appellant

50.    Slawe, Meredith C. – Counsel for *amici curiae* Restaurant Law Center, Retail Litigation Center, Inc., and National Retail Federation

51.    Sorrell, W. Drew II – Counsel for Defendant-Appellant

52.    Steinmetz, Eric – Plaintiff-Appellee

53.    Summers, Daniel – Former Plaintiff

54.    Tarpley, Philip A. – Counsel for Defendant-Appellant

55.    Theus, Shenika – Plaintiff-Appellee

56.    White, Deborah R. – Counsel for *amicus curiae* Retail Litigation Center, Inc.

57.    Wolfson, Tina – Counsel for Plaintiffs-Appellees

58.    Yanchunis, John Allen – Counsel for Plaintiffs-Appellees

Dated: November 23, 2021

*/s/ Meredith C. Slawe*
Meredith C. Slawe

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT OF INTEREST ................................................................1

STATEMENT OF THE ISSUES...............................................................4

SUMMARY OF ARGUMENT .................................................................4

ARGUMENT .......................................................................................6

    I.     The District Court's Decision Is Inconsistent with the Purpose

          Behind the Class Action Device.............................................6

    II.    The District Court's Decision Is Inconsistent with Controlling

          Authority. ............................................................................9

          A.     The District Court's Decision Is Inconsistent with the

                Supreme Court's Holding in *TransUnion*................................10

          B.     The District Court's Decision Is Also Inconsistent with this

                Court's Holding in *Tsao*.........................................................12

    III.    The District Court's Decision Threatens the Safeguards Afforded

          All Defendants Under Rule 23 and Raises Due Process Concerns. ...14

IV.    The District Court's Decision Has Significant Implications for Businesses Defending Class Actions, Including Restaurants and Retailers.............................................................................17

    A.    The District Court's Decision Will Invite and Embolden No-Injury Class Actions. ..........................................................18

    B.    No-Injury Class Actions Are Prejudicial to Businesses, Including Restaurants and Retailers, and Lack Social Value. ..........................................................................19

    C.    Data Breaches Hurt Businesses but Rarely Cause Cognizable Consumer Injury. ...................................................22

    D.    Decisive Action in this Case Can Help Curb No-Injury Class Actions that Are Increasingly Burdening Courts in this Circuit..................................................................23

CONCLUSION ...........................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................7

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)................................................................................19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................8

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011).........................................................................14, 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................20

*In re Brinker Data Incident Litig.*,
No. 18-0686, 2019 WL 3502993 (M.D. Fla. Aug. 1, 2019)...............18

*Cardoso v. Whirlpool Corp.*,
No. 21-60784, 2021 WL 2820822 (S.D. Fla. July 6, 2021) ...............25

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) ................................................................14

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ........................................................8, 15

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................12

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...............................................................7, 8, 14, 16

*Constellation Brands, U.S. Operations, Inc. v. NLRB*,
842 F.3d 784 (2d Cir. 2016) ..................................................................2

\* *Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ...................................................................*passim*

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)......................................................................................22

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ...................................................................21

*Facebook, Inc. v. Duguid*,
    141 S. Ct. 1163 (2021)..................................................................................24

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)....................................................................................4, 7

*Goldstein v. Costco Wholesale Corp.*,
    No. 21-80601, 2021 WL 4134774 (S.D. Fla. Sept. 9, 2021).............................25

*Goldstein v. Luxottica of Am., Inc.*,
    No. 21-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021),
    *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla.
    Sept. 9, 2021) ..............................................................................................25

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)......................................................................................20

*Jacome v. Spirit Airlines Inc.*,
    No. 21-0947, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021).........................25

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    568 U.S. 519 (2013)........................................................................................2

*Lewis v. Casey*,
    518 U.S. 343 (1996)........................................................................................7

*Lewis v. Governor of Ala.*,
    944 F.3d 1287 (11th Cir. 2019) (*en banc*) ..........................................................1

*Lindsey v. Normet*,
    405 U.S. 56 (1972)............................................................................4, 7, 14, 17

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) (en banc) ..................................................12, 13

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) .......................................................24

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)............................................................6, 7, 17

*South Dakota v. Wayfair, Inc.*,
   138 S. Ct. 2080 (2018)...................................................................2

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)........................................................................9

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) .........................................................22

*Swiggum v. EAN Servs., LLC*,
   No. 21-0493, 2021 WL 3022735 (M.D. Fla. July 16, 2021).............25

\*   *TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)..............................................................*passim*

\*   *Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) .................................................*passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016).......................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..............................................................5, 14, 16

*Whalen v. Michaels Stores, Inc.*,
   689 F. App'x 89 (2d Cir. 2017) .......................................................23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-2752, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ..............21

**Statutes**

Communications Act, Fla. Stat. Ann. § 934.01 *et seq.*............................24

**Other Authorities**

Fed. R. App. P. 29 ..................................................................................1

Fed. R. Civ. P. 23 ............................................................................*passim*

John H. Beisner et al., *Class Action "Cops": Public Servants or Private Entrepreneurs?*, 57 Stan. L. Rev. 1441, 1445 (2005)............................21

Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 659–60 (2010).........................................................................20

Nancy R. Thomas et al., *Privacy Litigation 2020 Year in Review: Data Breach Litigation*, Morrison & Foerster (Jan. 4, 2021)............................21

U.S. CONST. art. III...........................................................................*passim*

The Restaurant Law Center, the Retail Litigation Center, Inc., and the National Retail Federation respectfully submit this brief as *amici curiae* in support of Appellant.[1]

## STATEMENT OF INTEREST

The Restaurant Law Center ("Law Center") is a public policy organization affiliated with the National Restaurant Association, the world's largest foodservice trade association. The foodservice industry comprises over one million restaurants and other outlets that represent a broad and diverse group of owners and operators. The industry employs over 15 million people and is the nation's second-largest private-sector employer. The Law Center's *amicus* briefs have been cited favorably by state and federal courts. *See, e.g.*, *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1303 n.15 (11th Cir. 2019) (*en banc*).

The Retail Litigation Center, Inc. ("RLC") is the only trade organization solely dedicated to representing the retail industry in the courts. The RLC's members include many of the country's largest and most innovative retailers. Collectively, they employ millions of workers in Florida and the United States, provide goods and services to hundreds of millions of consumers, and account for

---

[1]     No counsel for a party authored this brief in whole or in part, and none of the parties or their counsel nor any other person or entity other than *amici* or their counsel made a monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this brief.

hundreds of billions of dollars in annual sales. Since its founding in 2010, the RLC has participated as an *amicus* in well over 150 cases. Its *amicus* briefs have been cited favorably by multiple courts, including the U.S. Supreme Court. *See, e.g.*, *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018); *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 542–43 (2013).

The National Retail Federation ("NRF") is the world's largest retail trade association and the voice of retail worldwide. NRF's membership includes retailers of all sizes, formats, and channels of distribution, as well as restaurants and industry partners from the United States and more than forty-five countries abroad. Retail is the nation's largest private-sector employer, contributing $3.9 trillion to annual GDP and supporting one in four U.S. jobs. For over a century, NRF has been a voice for every retailer and every retail job, communicating the impact retail has on local communities and global economies. NRF's *amicus* briefs have been cited favorably by multiple courts. *See, e.g.*, *Constellation Brands, U.S. Operations, Inc. v. NLRB*, 842 F.3d 784, 791 n.20 (2d Cir. 2016).

Through regular *amicus* participation, the Law Center, RLC, and NRF (collectively, "*Amici*") provide courts with perspectives on issues that have the potential to significantly impact their respective industries. This is one such case. This Court granted *Amici* leave to file a brief in support of Appellant Brinker International, Inc.'s ("Defendant") Petition for Permission to Appeal Pursuant to

Fed. R. Civ. P. 23(f) From Order Granting Class Certification.  *See* Order 1, *Brinker Int'l, Inc. v. Steinmetz*, No. 21-90011 (11th Cir. Sept. 16, 2021).

The district court's certification of two massive classes that include millions of individuals who sustained no actual or imminent risk of injury was not only improper in this case but threatens to establish a new standard for class certification that will improperly limit the rights of restaurants, retailers, and businesses in other litigation.  The district court assumed standing could be established merely if putative class members' information appeared on the "dark web" and they "incurred reasonable expenses or time spent in mitigation of the consequences of the Data Breach."  Order 12, 16, *In re Brinker Data Incident Litig.*, No. 18-0686 (M.D. Fla. Apr. 14, 2021), Dkt. No. 167 ("Order").  The district court concluded that averaging damages across the classes and awarding an average amount to all class members regardless of the actual injury, if any, suffered by each class member somehow makes common issues predominate.  *Id.* at 32–34.  The district court's ruling eliminates the safeguards afforded defendants under Rule 23 and will encourage the filing of even more no-injury class actions in this Circuit.

*Amici*'s members have been targets of actions, like this case, where a majority of class members have suffered no actual injury.  The Law Center, RLC, NRF, and their members have a strong interest in ensuring the protections built into Rule 23

3

are followed by the courts in order to curtail socially harmful and abusive class action practices in this and every other case.

## STATEMENT OF THE ISSUES

Whether Rule 23 permits a damages class to be certified where there is no evidence the vast majority of putative class members suffered either an actual or imminent risk of injury, and individual issues of standing and damages otherwise predominate.

## SUMMARY OF ARGUMENT

In appropriate cases, Rule 23 provides a procedural device for litigants to join together to seek redress for injuries while protecting due process rights. "[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citation omitted). But when defenses such as lack of standing are available as to each unnamed plaintiff, individualized issues overwhelm common ones, thereby precluding certification. In such cases, aggregate treatment of individual claims would deprive the defendant of its due process right "to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted). Such a result would also violate the Rules Enabling Act, which "forbids

interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).

In this case, Plaintiffs-Appellees ("Plaintiffs") cannot establish that the class members meet the requirements of Article III standing with common proof. When damages are sought, standing cannot be based on a "risk of future harm" unless and until the "risk of future harm materializes." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021). As this Court has made clear, a plaintiff cannot rely on the mere increased risk of identity theft or fraud following a data breach to establish standing without showing that such harm is "certainly impending." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021). Further, in *Cordoba*, this Court reaffirmed that, consistent with Rule 23(b)(3)'s predominance requirement, a class cannot be certified if standing for each class member cannot be established with class-wide proof. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274–75 (11th Cir. 2019).

In certifying classes in the underlying action, the district court misapplied this controlling precedent to: (a) create a novel test for standing disassociated from Article III's concrete injury requirement; (b) certify classes that will require individualized proof of each class member's standing; and (c) deprive Defendant of its due process rights by permitting an "average" damages analysis regardless of

individual injury.  Respectfully, the district court's certification decision is a dangerous departure from important, well-settled rules and protections.

Aggregate litigation when the majority of class members have suffered no actual injury lacks social value.  Such no-injury class actions are pursued to exert pressure on defendants to settle or risk massive aggregate exposure.  *See Cordoba*, 942 F.3d at 1276 ("[A] class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits.").  These issues are magnified in the context of data breaches, where massive no-injury class actions compound the already considerable burdens and costs businesses incur after being hit by cyber criminals.  If left undisturbed, the district court's decision will encourage the filing of additional no-injury class actions, which already unduly burden the district courts in this Circuit, in the data breach and many other contexts.  The district court's decision should be reversed.

## ARGUMENT

## I.    The District Court's Decision Is Inconsistent with the Purpose Behind the Class Action Device.

Rule 23 was designed, in part, to increase administrative efficiencies through collective actions while ensuring that due process rights are protected.  Where many individuals experience the same injury, Rule 23 provides a path for a class to collectively seek redress through common proof.  *See Shady Grove Orthopedic*

*Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 408–09 (2010). In the appropriate context, the class action device "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." *Falcon*, 457 U.S. at 155 (citation omitted).

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). As a procedural tool, Rule 23 does not provide litigants with greater substantive rights than they otherwise would have if their claims had proceeded individually. *Shady Grove*, 559 U.S. at 406–07. And the class action device may not be used to deprive a defendant of its fundamental due process right to assert individual defenses. *Lindsey*, 405 U.S. at 66. One such defense is lack of standing. *See TransUnion*, 141 S. Ct. at 2208; *Lewis v. Casey*, 518 U.S. 343, 360 n.7 (1996) ("Courts have no power to presume and remediate harm that has not been established.").

To that end, Rule 23(b) imposes "demanding" safeguards to preclude certification where class treatment is not "clearly called for." *See Comcast*, 569 U.S. at 34 (citations omitted); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (Rule 23 imposes "stringent requirements for certification that in practice exclude most claims."). Among other things, before certifying a damages class, a court must be assured that "questions of law or fact common to class

7

members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Comcast*, 569 U.S. at 34. In adding this "predominance" requirement, "the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, . . . without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted). But where "the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues," the class action device cannot be used. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citation omitted).

The key purposes behind, and the important protections of, Rule 23 upon which *Amici*'s members rely will be eroded if—contrary to Article III standing requirements—a class can be certified where the majority of class members suffered no actual injury. Here, the district court certified two no-injury classes that could expose Defendant to possibly billions of dollars in damages even though it would be administratively impossible for each unnamed class member to prove they suffered a concrete injury. The district court looked past the inherent individual factual issues and defenses relating to standing and damages, as well as Defendant's due process rights. Its decision eviscerated the protections afforded Defendant under Rule 23. And beyond this action, if left in place, the ruling will encourage abusive "*in*

*terrorem*" class actions—particularly their use to enrich counsel at the expense of the class, defendants, and the courts in this Circuit. *See Cordoba*, 942 F.3d at 1276.

## II. The District Court's Decision Is Inconsistent with Controlling Authority.

The district court's certification decision is contrary to Supreme Court and this Court's controlling precedent. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 141 S. Ct. at 2208 (citation omitted). Rather, only plaintiffs that have been concretely harmed by a defendant's actions may assert a claim in federal court. *Id.* at 2205. Plaintiffs may seek relief only if they can establish a concrete injury-in-fact that is traceable to a defendant's illegal activity and redressable by the court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Thus, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion*, 141 S. Ct. at 2208.

The district court certified two classes comprised of millions of individuals who suffered no justiciable injury. The district court concluded that class members could nonetheless establish standing under Article III because each class member (a) had information published to the "dark web" and (b) "incurred reasonable expenses or time spent in mitigation of the consequences of the Data Breach." Order 12, 16. This conclusion, however, cannot be reconciled with the Supreme Court's recent decision in *TransUnion* and this Court's holding in *Tsao*.

9

## A.    The District Court's Decision Is Inconsistent with the Supreme Court's Holding in *TransUnion*.

The Supreme Court's decision in *TransUnion* is instructive.  In that case, the plaintiffs claimed that TransUnion violated the Fair Credit Reporting Act when it added inaccurate alerts to their credit files that misidentified them as being on a government list of potential terrorists, drug traffickers, and criminals.  141 S. Ct. at 2200, 2208–10.  For most class members—6,332 out of 8,185—the affected credit files were never shared with third parties during the relevant time period.  *Id.* at 2200.

The plaintiffs nonetheless sought to certify classes under Rule 23(b)(3).  They argued that all class members suffered a concrete injury because the "misleading [] alerts in their internal credit files exposed them to a material risk that the information would be disseminated in the future."  *Id.* at 2210.  The Supreme Court disagreed, concluding that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm."  *Id.* at 2210–11.  Only when "the risk of future harm materializes and the individual suffers a concrete harm" will a plaintiff have standing to assert a claim for damages.  *Id.* at 2211.  Because the majority of class members "did not demonstrate that the risk of future harm materialized—that is, that the inaccurate [] alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit"—they lacked standing to pursue claims.  *Id.*

As in *TransUnion*, the vast majority of class members lack any concrete injury. Plaintiffs offered no evidence that these class members suffered fraud or identity theft caused by and traceable to the data breach, or that these class members spent any time or money to address the breach. To the contrary, Plaintiffs' counsel merely represented, without proof, that "all of the payment card information taken in the Data Breach is on the dark web." Order 12 (emphasis omitted). But setting aside the veracity of that assertion, mere publication of information on the dark web by itself does not constitute concrete harm. Rather, "a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *TransUnion*, 141 S. Ct. at 2198 (citation and internal quotation marks omitted).

Here, there is no allegation that the information allegedly published on the dark web would subject Plaintiffs to "hatred, contempt, or ridicule." In addition, any increased risk of future harm resulting from such publication, which was not demonstrated, is too speculative to establish a concrete harm. As Plaintiffs "did not demonstrate that the risk of future harm materialized" for absent class members, they lack standing to assert claims for damages.

**B.    The District Court's Decision Is Also Inconsistent with this Court's Holding in *Tsao*.**

Nor can Plaintiffs rely on class members' voluntary mitigation efforts to establish standing.   "Where a 'hypothetical future harm' is not 'certainly impending,' plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves.'"  *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). Applying this rule, this Court held that the allegation of an elevated risk of identity theft following a data breach cannot establish Article III standing.   To establish standing, a proposed class representative in a data breach action must offer "specific evidence of **some** misuse of class members' data, . . . sufficient to show that the threatened harm of future identity theft was 'certainly impending' [] or that there [is] a 'substantial risk' of such harm."  *Tsao*, 986 F.3d at 1344.

The district court erroneously assumed that because, according to Plaintiffs' counsel, "all of the payment card information taken in the Data Breach is on the dark web," all class members "have had their data 'misused'" in a manner sufficient to confer standing.   Order 12, 16 (emphasis omitted).   The district court, however, failed to address whether such "misuse" rendered the "threatened harm of future identity theft" any less speculative.  *Tsao*, 986 F.3d at 1344; *see also id.* at 1342–43. For example, the district court cited no evidence to suggest that the publication of data following a breach increases any individual's risk of identity theft, let alone that

such threatened harm was "certainly impending." *See* Order 12. "[C]onclusory allegations of an 'elevated risk of identity theft' . . . '[are] simply not enough' to confer standing." *Tsao*, 986 F.3d at 1343 (quoting *Muransky*, 979 F.3d at 933); *see also TransUnion*, 141 S. Ct. at 2212 (finding risk of harm "too speculative to support Article III standing" where "no evidence in the record establishes a serious likelihood of" the alleged harm).

The classes certified by the district court include all individuals who "incurred reasonable expenses or time spent in mitigation of the consequences of the Data Breach." Order 16. In *Tsao*, this Court rejected the use of similar mitigation efforts as a basis to "manufacture standing." *Tsao*, 986 F.3d at 1344–45. And while some class members might have taken action in response to the alleged publication of information on the dark web, many class members likely have no knowledge that their information might have been published. As the Supreme Court noted in *TransUnion*, "[i]t is difficult to see how a risk of future harm could supply the basis for a plaintiff's standing when the plaintiff did not even know that there was a risk of future harm." 141 S. Ct. at 2212.

Therefore, the district court improperly swept into the classes millions of individuals who suffered no concrete injury and who cannot establish standing. Its ruling is inconsistent with the standing requirements under Article III and binding precedent and should be reversed. "In an era of frequent litigation [and] class

actions, . . . courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011).

## III. The District Court's Decision Threatens the Safeguards Afforded All Defendants Under Rule 23 and Raises Due Process Concerns.

Even if the district court's certification decision were properly tailored to capture only justiciable claims (it is not), it still undermines the safeguards built into Rule 23. Rule 23(b)(3) was carefully crafted to protect a defendant's "due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); *see also Dukes*, 564 U.S. at 367; *Lindsey*, 405 U.S. at 66. For this reason, before certifying a damages class, a court must be assured that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Comcast*, 569 U.S. at 34.

By certifying two classes replete with individual factual issues and defenses, the district court eviscerated the protections afforded Defendant under Rule 23. Under the district court's rewritten class definitions, each putative class member will still need to demonstrate, at a minimum, that (a) their personal information was "accessed by cybercriminals"; (b) they incurred "some injury in the form of out-of-pocket expenses or time spent" in mitigation; and (c) they took such mitigation steps in response to the demonstrated "access" and not the data breach in general. Order

14

16.  That will require millions of individualized mini-trials on class membership and standing.  *See TransUnion*, 141 S. Ct. at 2208 ("[S]tanding 'must be supported adequately by the evidence adduced at trial.'" (citation omitted)).  The district court even acknowledged that its revised class definitions "might make ascertaining the class more difficult as some self-identification may be required."  Order 16.

As this Court made clear in *Cordoba*, a damages class is inappropriate if "the district court will have to determine whether each of the absent class members has standing before they could be granted any relief."  942 F.3d at 1274, 1277 (decertifying class on Rule 23(f) review).  In such cases, standing "is an individualized issue" that predominates, which precludes certification.  *Id.*; *see also Carriuolo*, 823 F.3d at 985 ("[C]ommon issues will not predominate . . . [if the] resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.").[2]

---

[2]    The district court's decision to allow class members to "self-identif[y]" raises several additional fundamental due process concerns.  For example, if class members self-identify during discovery, millions of mini-trials would be required on standing, which would be administratively impossible.  In contrast, if class members self-identify after trial through a claims process, Defendant will have been deprived of its right to have the jury decide crucial issues of fact.  Under this scenario, the class's burden of proof on a key element of the claims would impermissibly be reduced or eliminated.  And if, in this scenario, Defendant prevails at trial, the parties will have no way of knowing who among the class members are bound by the judgment.

The district court further circumvented the due process protections afforded defendants under Rule 23(b)(3) by adopting an "averages calculation" for damages. Under this approach, each class member would receive the same "standard dollar amount" regardless of any actual injury. Order 7, 32–34. The Supreme Court has repeatedly disallowed such end-runs around the Rule 23 predominance requirement as inconsistent with the Rules Enabling Act and a defendant's fundamental due process rights.[3]

In *Dukes*, for example, the Supreme Court rejected a similar averaging methodology. 564 U.S. at 367. "[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Id.* As such, the Supreme Court held that "a class cannot be certified" if doing so would deprive the defendant of the right to assert "defenses to individual claims," including as to damages. *Id.*

The Supreme Court reached a similar conclusion in *Comcast*, as the damages model "failed to measure damages resulting from the particular [] injury on which petitioners' liability in this action is premised." 569 U.S. at 36. If all a litigant needed to overcome the predominance requirement was "**any** method of measurement . . . [that] can be applied classwide," then "Rule 23(b)(3)'s predominance requirement [would be] a nullity." *Id.* at 35–36; *see also Tyson*

---

[3]    Allowing an award of average damages is also fundamentally unfair to any class member who can establish an actual injury because they will be substantially undercompensated in favor of class members that suffered no injury.

*Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (A representative sample is appropriate where "each class member could have relied on that sample to establish liability if he or she had brought an individual action.").

The class action device is a procedural vehicle; it does not alleviate each absent class member's obligation to establish their individual right to relief. *See Shady Grove*, 559 U.S. at 406–07. The district court ignored this fundamental requirement by certifying classes that assume—without establishing—that standing and damages can be determined through class-wide proof. In this case, any damages class will deprive Defendant of its right to assert individual defenses and test each class member's claims. The class action device may not be used this way. The implications of the district court's decision extend beyond this particular case.

## IV. The District Court's Decision Has Significant Implications for Businesses Defending Class Actions, Including Restaurants and Retailers.

The district court's decision exacerbated a continuing problem highlighted by the Supreme Court—the failure to adhere to Rule 23's built-in limitations on certification. If the district court's ruling stands, the separate and distinct inquiries of commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3) would collapse into one. Plaintiffs could obtain class-wide aggregate damages based on an alleged violation of a duty owed to them without proof of any actual injury, and a defendant's due process right to "present every available defense" would be eviscerated. *See Lindsey*, 405 U.S. at 66.

The district court's decision provides plaintiffs' attorneys with an erroneous roadmap to certification of no-injury class actions.  Such class actions harm businesses—including restaurants and retailers—while serving no social purpose.  Indeed, the district courts in this Circuit have already seen their dockets flooded with such actions.  Respectfully, to protect litigants (and courts) from abusive class action practices, this Court must "insist on the formal rules of standing" being carefully followed.  *Winn*, 563 U.S. at 146.

### A.    The District Court's Decision Will Invite and Embolden No-Injury Class Actions.

The two classes certified by the district court include as many as 4.5 million individuals, the majority of whom could never establish any cognizable injury.  Indeed, before rewriting the class definitions and granting certification, the district court dismissed the claims of two of the named plaintiffs for lack of standing.  *In re Brinker Data Incident Litig.*, No. 18-0686, 2019 WL 3502993, at *7 (M.D. Fla. Aug. 1, 2019).  Remarkably, those dismissed plaintiffs, along with the 4.5 million other individuals Plaintiffs now purport to represent, are ostensibly class members under the district court's decision.

In an effort to "avoid later predominance issues regarding standing," the district court redefined the classes to include only those individuals who mitigated the perceived consequences of the data breach.  Order 15–16.  As the district court acknowledged, however, these definitions defer questions of class membership until

18

each individual "self-identifi[es]" through a "more difficult" claims process. *Id.* at 16. But Rule 23 was "specifically" drafted "to assure that members of the class would be identified before trial on the merits," not after. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). Looking past this requirement, the district court inappropriately certified two classes whose "membership can only be determined after the entire case has been litigated." *Cordoba*, 942 F.3d at 1277.

As a result, the actual size of the classes—and therefore Defendant's actual exposure—will only be determinable after millions of individualized mini-trials. *See TransUnion*, 141 S. Ct. at 2208. In the meantime, Plaintiffs can continue to represent 4.5 million individuals, including the previously dismissed plaintiffs. *See* Order 8, 38. And more importantly, they may continue to pursue possibly billions of dollars in damages on behalf of absent class members, whether or not any individual class members have suffered a concrete injury. *See* Br. for Appellant 18 n.7.

### B.    No-Injury Class Actions Are Prejudicial to Businesses, Including Restaurants and Retailers, and Lack Social Value.

The class action device serves as a vehicle by which an individual who suffered a small, but actual, injury that is insufficient to justify bringing an individual action can vindicate their rights and obtain relief. But when large numbers of class members suffered no actual injury, this model is inappropriate and harmful. Instead, the class action device is stretched beyond its intended purpose and its invocation—

along with the accompanying threat of litigation costs and aggregate exposure—serves only to compel unjustified settlements and windfall attorneys' fees. These cases further incentivize the exploitation of the class action device. No-injury class actions undermine the legitimate purpose behind class litigation and lack social value.

The harm that no-injury class actions inflict on businesses is undeniable. "Given the '*in terrorem* character of a class action,' a class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." *Cordoba*, 942 F.3d at 1276 (citation omitted). "Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of '*in terrorem*' settlements that class actions entail"). The pressure to settle without "testing of the plaintiffs' case" only increases following class certification. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 296 n.7 (2014) (citation omitted).

Such "*in terrorem*" settlements lack social value. Indeed, class action settlements typically result in astronomical attorneys' fees for class counsel with a correspondingly minimal recovery for each member of the class. *See, e.g.*, Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A*

*Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 659–60 (2010); John H. Beisner et al., *Class Action "Cops": Public Servants or Private Entrepreneurs?*, 57 Stan. L. Rev. 1441, 1445 (2005) ("[O]ne of the most heavily criticized class action abuses has been the use of class action settlements to generate huge fees for lawyers and little or nothing for the allegedly injured consumers.").

Data breach class actions are particularly susceptible to this type of abuse. A settlement class in a major data breach case can include hundreds of millions of individuals. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-2752, 2020 WL 4212811, at *24 (N.D. Cal. July 22, 2020) (surveying cases). These settlements can result in "megafunds" and, in turn, millions of dollars in attorneys' fees. *Id.*; *see also, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1281 (11th Cir. 2021) (affirming attorneys' fee award of $77.5 million). Class counsel benefit from this windfall even though the "size of the settlement fund is largely a function of the size of the settlement class, and 'not entirely attributable to class counsel's skill.'" *In re Yahoo! Inc.*, 2020 WL 4212811, at *24 (approving nearly $23 million in attorneys' fees after reducing award nearly a third).[4]

---

[4]    *See also* Nancy R. Thomas et al., *Privacy Litigation 2020 Year in Review: Data Breach Litigation*, Morrison & Foerster (Jan. 4, 2021) (in a survey of data breach settlements, finding the extent of litigation and type of data involved did not impact settlement value, even though "[c]ourts have recognized that payment card information is less sensitive than other types of personal data"), https://www.mofo.com/resources/insights/210104-data-breach-litigation-2020.html.

Here, the district court's certification decision threatens Defendant with possibly billions of dollars in damages, asserted *en masse* on behalf of millions of individuals who lack justiciable claims, which Defendant cannot realistically challenge. By looking past the requirements of Article III and Rule 23 in this case, the district court's certification decision will encourage more "abusive" plaintiffs to file "largely groundless claim[s] . . . simply tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

### C.    Data Breaches Hurt Businesses but Rarely Cause Cognizable Consumer Injury.

Data breaches are costly for companies. While potential data breaches have imposed substantial costs on companies, they rarely result in injury to individuals. As this Court recognized, "most breaches have not resulted in detected incidents of identity theft . . . [or] detected incidents of fraud." *Tsao*, 986 F.3d at 1342–43 (citation omitted). Payment card information in particular "generally cannot be used alone to open unauthorized new accounts" and does not "raise[] a substantial risk of identity theft." *Id.* at 1343 (citation omitted). Where fraudulent charges do occur, "federal law and card-issuer contracts ordinarily absolve the consumer from any obligation to pay the fraudulent charge." *In re SuperValu, Inc.*, 925 F.3d 955, 964–65 (8th Cir. 2019) (plaintiff failed to allege actual injury resulting from fraudulent charges); *see also Tsao*, 986 F.3d at 1344 (cancelling cards "effectively eliminate[d]

the risk of credit card fraud in the future"); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) (plaintiff was not "in any way liable" for alleged fraudulent charges to her account).

### D. Decisive Action in this Case Can Help Curb No-Injury Class Actions that Are Increasingly Burdening Courts in this Circuit.

Data breach class actions have become pervasive.  In the past six months alone, at least seventeen such actions were filed in or removed to district courts in this Circuit.[5]  Like Plaintiffs here, these plaintiffs seek redress for time and money spent mitigating the "increased risk of identity theft" following a data breach, despite this Court having held such claims non-justiciable.  *E.g.*, Compl. ¶ 6, *Travieso*, No. 21-2496 (N.D. Ga. June 18, 2021); *see also Tsao*, 986 F.3d at 1344–45.  Some

---

[5]    *See, e.g.*, *Mullen v. Syniverse Corp.*, No. 21-2363 (M.D. Fla. Oct. 7, 2021); *Baron v. Syniverse Corp.*, No. 21-2349 (M.D. Fla. Oct. 5, 2021); *Weaver v. ParkMobile, LLC*, No. 21-4112 (N.D. Ga., transferred Oct. 5, 2021); *Harrington v. Elekta, Inc.*, No. 21-3997 (N.D. Ga. Sept. 28, 2021); *Phillips v. Coastal Family Health Ctr.*, No. 21-0404 (S.D. Ala. Sept. 20, 2021); *Tracy v. Elekta, Inc.*, No. 21-2851 (N.D. Ga. July 16, 2021); *Hoffman-Mock v. 20/20 Eye Care Network, Inc.*, No. 21-61406 (S.D. Fla. July 8, 2021); *Kurmangaliyev v. ParkMobile, LLC*, No. 21-2745 (N.D. Ga. July 8, 2021); *Fraguada v. 20/20 Eye Care Network, Inc.*, No. 21-61302 (S.D. Fla. June 23, 2021); *Hayes v. Automation Pers. Servs. Inc.*, No. 21-0859 (N.D. Ala. June 23, 2021); *Bowen v. 20/20 Eye Care Network, Inc.*, No. 21-61292 (S.D. Fla. June 22, 2021); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-61275 (S.D. Fla. June 21, 2021); *Travieso v. ParkMobile, LLC*, No. 21-2496 (N.D. Ga. June 18, 2021); *Nielsen v. MEDNAX, Inc.*, No. 21-61233 (S.D. Fla. transferred June 14, 2021); *A.W. v. Pediatrix Med. Grp. of Kan., P.C.*, No. 21-61181 (S.D. Fla., transferred June 7, 2021); *George v. ParkMobile, LLC*, No. 21-2252 (N.D. Ga. June 1, 2021); *Baker v. ParkMobile, LLC*, No. 21-2182 (N.D. Ga. May 25, 2021).

plaintiffs even acknowledge that "fraudulent activity resulting from the Data Breach may not come to light for years."  Compl. ¶ 44, *Mullen*, No. 21-2363 (M.D. Fla. Oct. 7, 2021); *cf. TransUnion*, 141 S. Ct. at 2211 (plaintiffs lack standing until the "risk of future harm materializes").  Nonetheless, these plaintiffs purport to represent millions of class members and seek millions of dollars in damages even though they have suffered no actual harm.

But the abuse of the class action device is not limited to data breach cases. For example, Telephone Consumer Protection Act ("TCPA")[6] plaintiffs' lawyers, both in anticipation of and in response to the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), engaged in active solicitation efforts in connection with no-injury "session replay" class actions in Florida.  As a result of these solicitation efforts, at least forty no-injury session replay lawsuits have been litigated in Florida district courts this year.  These boilerplate complaints seek to miscast routine, expected, and commercially reasonable internet technology—used by many businesses, regulators, courts, and plaintiffs' class action lawyers on websites—as "wiretapping" under the Florida Security of Communications Act, Fla. Stat. Ann. § 934.01 *et seq.* ("FSCA").  As courts have begun to recognize, these

---

[6] As this Court has recognized, TCPA class actions are frequently pursued even when the named plaintiff suffered no actual injury. *See Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) (The harm suffered from receiving a single text message "is not the kind of harm that constitutes an injury in fact.").

claims lack merit.[7]  With strong rulings from the courts, including in this Circuit, this discrete wave of no-injury class actions seeking to leverage aggregate damages for no-injury claims has been quieted.

This tactic of flooding the courts with no-injury class actions burdens the judiciary, and harms businesses, their employees, and the consumers they serve. These cases create enormous risks of aggregate exposure for businesses and deprive them of a meaningful opportunity to raise defenses.  Adherence to the fundamental safeguards embedded in Rule 23 and Article III is not only mandated by controlling precedent, it is necessary to ensure fundamental fairness to class action defendants, including restaurants and retailers, in this case and all others.  *Amici* respectfully urge this Court to reverse.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendant's brief, the district court's order should be reversed.

---

[7]     *See Goldstein v. Costco Wholesale Corp.*, No. 21-80601, 2021 WL 4134774, at *3 (S.D. Fla. Sept. 9, 2021) (granting motion to dismiss FSCA claim); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546, 2021 WL 4093295, at *1 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (same); *Swiggum v. EAN Servs., LLC*, No. 21-0493, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) (same); *Cardoso v. Whirlpool Corp.*, No. 21-60784, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Jacome v. Spirit Airlines Inc.*, No. 21-0947, 2021 WL 3087860, at *2 (Fla. Cir. Ct. June 17, 2021) (same).

Respectfully submitted,

Dated: November 23, 2021

*/s/ Meredith C. Slawe*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street NW, Suite 700
Washington, DC 20036
(202) 492-5037

*Counsel for Restaurant Law Center*

Deborah R. White
RETAIL LITIGATION CENTER, INC.
99 M Street SE, Suite 700
Washington, DC 20003
(202) 869-0200

*Counsel for Retail Litigation Center, Inc.*

Stephanie A. Martz
NATIONAL RETAIL FEDERATION
1101 New York Avenue NW, Suite 1200
Washington, DC 20005
(202) 783-7971

*Counsel for National Retail Federation*

Michael W. McTigue Jr.
Meredith C. Slawe
Max E. Kaplan
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
(215) 665-2000

*Counsel for Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing Brief of *Amici Curiae* complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 6,195 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

The undersigned further certifies that this Brief of *Amici Curiae* complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2016 in 14 point Times New Roman font.

*/s/ Meredith C. Slawe*
*Counsel for Amici Curiae*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 23rd day of November, 2021, I caused this Brief

of *Amici Curiae* to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to all registered CM/ECF

users.

/s/ *Meredith C. Slawe*
*Counsel for Amici Curiae*